We will return to the next case on our calendar which is Katz v. Focus Forward. We will reserve decision. Go ahead, Mr. Hara. Good afternoon, your honors. May it please the court. There is one issue before the court today. It's an issue of first impression for this court. And it's whether a facsimile that offers to pay the fax recipient money in exchange for the recipient answering a market research survey constitutes an advertisement under the Telephone Consumer Protection Act. The statute defines that term, advertisement, in relevant part as any material advertising the commercial availability or quality of any property, goods, or services. We're asking the court to hold here that this definition is broad enough in referring to any property, goods, or services to cover the faxes in this case in which the defendant What is the purpose of this survey? I'm sorry? I know, look, there are arguments, I understand, textual and otherwise back and forth, but what is the purpose of this survey? Oh, the purpose of this survey. We do not know. That's something we would explore in discovery for certain if we were able to get past a motion to dismiss. But I think it's undisputed that Focus Forward's business is conducting market research surveys on behalf of its clients. So I have always presumed, and the defendant has never told us we're wrong, that a client hired Focus Forward to conduct these surveys, either on dermatological, topical products, which is the kind of doctor Dr. Katz is, he's a dermatologist. So the survey itself is not directly to provide a product or service, is that correct? It's not seeking to provide a product or service from Focus Forward to Dr. Katz. No, it's seeking to enlist Dr. Katz to perform a service for Focus Forward. So the district court dismissed for failure to state a claim holding it's not an advertisement, and there are three main reasons why this court should reverse. First, under the plain language of the statute, these faxes, they're at pages 25 and 27 of the appendix, they're advertisements as a matter of law. They advertise the commercial availability of survey-taking services that the defendant wishes to purchase from the plaintiff. Stating that the defendant will pay $150 as compensation, is the word that the faxes use, for those services. They state that compensation is for, quote, the value of your time. They state, in effect, you have something that is, you have a commercially available service. You may not know that you have it, and we're informing you that you can do this, and we want to purchase it. Right, but doesn't it require that it's the sender who's offering something, that the person sending the fax is offering an available, commercially available service product, what have you, not the person receiving the fax? I agree, that's what the district court held in this case, and it's absolutely contradicted by the statute. The statute doesn't say, and the defendants would like the court to read the statute to say, any material advertising, the commercial availability or quality of the fax sender's property, goods, or services. That's how they want the statute to read. Congress didn't write it that way. It said commercial availability or quality of any property, goods, or services. Right, but doesn't the, I mean, I can't advertise something that you're giving me. That's not, I mean, even without having the qualification of, you know, the sender or the receiver, just as a matter of interpretation, it doesn't make sense to say that I send you a solicitation for something. I'm not offering you a service. I'm asking you to provide me a service, and I'll pay for it. That's not me offering, advertising something that's available, that I have, that I can give to you. Right, the statute does not say anything about the sender having it and making it available to the receiver. When must the, let's say the services, be commercially available? At what point? Must it be commercially available at the time that the message is sent? I don't think so. But what is it about the text of the statute that tells me that I don't think so is the right answer? Because you could tell someone that something is going to be commercially available in the future. It's not commercially available yet, but it could be available in the future. You could imagine that, right? I mean, just take a simpler example. We have a new model of this car coming out next year. You can't buy it yet, but it's coming next year. It's not commercially available. The statute doesn't say it's going to be available. It says advertising something available. So that extra step you're adding in of, well, it's going to be available, that's not in the language of the statute. The statute does not say something that is currently commercially available. It says any material advertising the commercial availability. Right. So how, as a common sense matter, how are we to understand that as saying anything other than you're advertising something that is commercially available? Right. You're telling the recipient this property, good, or service is commercially available. It does not say it has to be the sender's property, good, or service. No, I'm not. So you're – I'm talking about the timing. You are focused on sender, seller, buyer. That's not what my questions are focused on. I'm talking about the timing. So at the time of the advertisement, must the property, goods, or services be commercially available given the language of the statute? I don't think so. I think someone could send a fax saying this model of this product is going to come out next year. It's not commercially available yet. It would still be an advertisement, of course. What about if you see a commercial during the Super Bowl for a car that's not out yet? Oh, you can't get it yet, so therefore it's not advertised. Of course it's an advertisement. And the Third Circuit, I have to make sure I focus on this because there's only one Circuit Court of Appeals. How do I know that – I'm sorry to interrupt you, but maybe this does get back to the seller-buyer issue. But how is something available at the time that you issue the advertising unless you know that the person receiving the advertising has services that are available? I don't think the statute requires the property, good, or service to be commercially available at the time the fax is sent. I'm not sure if that answers your question. No. No. Okay. That's your best answer. Yeah. My time has expired. I do want to get out in my opening that we're relying heavily on the Third Circuit's decision in Fishbein v. Olson Research Group. It's the only Circuit Court of Appeals that has decided this issue. This court is inclined to follow its sister circuits on a question of first impression, and we would ask that you do that. Following Fishbein here would require reversing the district court. I think even the defendants agree with that, that their motion would not be granted in the Third Circuit. Thank you. Thank you very much. Ms. Staffel. Good afternoon, Your Honors. May it please the Court. My name is Samantha Staffel. I'm with the law firm of Buchanan, Ingersoll, and Rooney down in Philadelphia, and I'm here today on behalf of Appellee Focus Forward. On a personal note, this is my first oral argument in the Second Circuit. I'm very excited to be here. My last appellate argument was in March of 2020, done from my driveway in my back seat of the car. So this is a very different experience, and it's nice to be back in person. Likewise. We're glad to see you here. Your Honors, the precise issue before the Court today is whether a faxed invitation to participate in a compensated market research survey constitutes an advertisement under the TCPA and its implementing regulations. The District Court below, applying the unambiguous and plain language of the statute, correctly found that the TCPA does not apply to this type of faxed invitation and granted Focus Forward's motion to dismiss. By way of background, plaintiff alleges that it received two unsolicited faxes from Focus Forward in the fall of 2019, one on September 12th and the other on October 25th. What if the—and again, you know, I understand the textual arguments on both sides. I'm obviously very familiar with the Third Circuit's opinion and Judge Crowder's opinion. But what if the advertised—what if the call or the fax here were that we are conducting a survey about a very particular product? So Kleenex, and we're going to pay you an honorarium to conduct a survey about Kleenex and every question in the survey is about, you know, a particular product. I'm using Kleenex as an example. Isn't that the sort of thing that the TCPA is designed to deter? Isn't that the sort of advertising or communication? That's why I asked—my first question was what is a survey? You know, what is it trying to get to? And, you know, the answer was we'll figure that out in discovery, but you have more access to information. Yes, I mean, so Focus Forward is in the business of conducting scientifically or statistically based market research studies. They are hired by health care companies and other industries and seek information and input from physicians, medical practices, to anonymize information and relate it to their clients. Focus Forward does not sell its market research services to physicians, medical practices. It is not a drug manufacturer hoping that the doctor will prescribe a certain type of medicine to his or her patient. And what's very important here is that to participate in a survey, you need to be prequalified. That's on the face of the fax that was sent. The recipient, if he or she is interested, picks up the phone, speaks to a specific person at a specific number. Some screening questions are answered, and then the person can decide to participate in the survey. So this is not the equivalent of we buy gold or I'm looking for your used car. This is something that is more specific and more targeted. And something that's always bothered me about the Third Circuit's opinion is if the market research company sent out the same fax but did not offer to pay anything as an honorarium, whether it's a $5 Amazon gift card or a $150 honorarium, that would not be a problem under the majority's opinion. Well, that's just Jordan's dissent in part. It is, it is, in part. But it's something that has really stuck with me. Do you agree that there might be – so I'm just trying to really understand. There might be some market surveys that would qualify as an advertisement under the relevant provision of the TCPA, 227.85? I don't think so. And there's two cases that are slightly different but relevant. But taking a few steps back, the FCC has said that telephonic surveys are outside the bounds of the TCPA. There's a House Committee report that was issued in around the time the statute was passed in 1991. And there are two cases – they're both district court cases. They're outside of the circuit. One's in Arizona. The other is in the Southern District of California that are cited in our briefs where somebody calls up and says, I want to buy your house. Or who did you sell your house to so I can market a security alarm system to the new owner of the house? It's the pretextual way to get at it. But that's maybe what I'm getting at is that there might be some surveys that are pure pretext. Yes, but plaintiff here has not alleged pretext. And it is something my colleague noted that he asked that – or he suggested that this circuit was bound to follow the fish find decision in the Third Circuit. But if you look at pretext, that's one area where the two circuits don't agree. This court has found that pretextual liability exists. The Third Circuit rejected it in office. Go ahead. So, you know, going back to what you said, Your Honor, this really is a textual analysis. As the Supreme Court confirmed in its Dugan decision, and Judge Lynch recently wrote in the Gorse Hotels decision, the analysis begins and ends with a text of the statute. The text gives this court all it needs to decide the issue before it. And if you look at the definition of the TCPA – or the TCPA defines an unsolicited advertisement as any material advertising the commercial availability or quality of any property, goods, or services transmitted to a person without their prior express invitation or permission. These faxes are requests for information. They do not advertise the commercial availability of my client's services. They do not advertise the quality of my client's services. They are seeking to obtain something, which is the opposite of available. And one thing I think that might be helpful in the court's analysis is to look at adjacent definitions. The TCPA includes a definition of telephone solicitation immediately before unsolicited advertisement. And the term telephone solicitation is defined as the initiation of a telephone call or message for the purpose of encouraging the purchase of or rental of or investment in property, goods, or services. So it is that – it is the Jantz case from Arizona. It is the Nunston case from the Southern District of California. And cases where somebody reaches out and says, I want to buy what you have are not violations of the TCPA. It may be quirky, but it is what the statute says. And the folks in Congress wrote the statute, and we are bound to follow it. Although it does not make a – it does not, on its face at least, present or have an obvious difference or make an obvious difference between a seller and a buyer. I'm sorry. You're under the term unsolicited advertisement? Yes. And that's part of the point. And that is what my colleague has argued. But we – Focus Forward does not sell anything that plaintiff could buy. And I think that is an important distinguishing factor. This is not the case of we buy gold. This is akin to what the FCC talked about in the 2006 rule of inviting contractors to bid on a construction project, which the FCC was outside the bounds of the facts rule under the TCPA. This is akin to saying, I'm looking for a babysitter on New Year's Eve. Send me your resumes. I might be interested. It is not an instance of offering to purchase something that is generically available. And I think what's very important is a handful of courts have looked at this issue in the country. Thank you for your time. Thank you very much. My friend just said that it can't be an advertisement because Focus Forward does not sell anything that the plaintiff could buy. But then we talked about how it's not the we buy gold situation, which I think means that they're conceding that would be an advertisement. We buy gold or we buy your old houses. So it can't be that the facts has to try to sell you something. That can't be the principal distinction, that an advertisement must try to sell to the recipient. That won't hold up to counter-examples. So it has to be broader than that. And Congress wrote this statute extremely broadly. It could have said advertising the commercial availability or quality of the fax centers currently available property goods or services. It doesn't contain those words. It says any goods or services. It's deliberately very broad. Congress could have done that. I mean, it would know how to do that, how to distinguish between recipient and sender or between the seller and buyer. I mean, there are numerous sections of the TPA that distinguish between those things. So Congress knew how to do that, and it didn't do it here. As to, you know, what Focus Forward does and what is the purpose of this survey, I just learned more about Focus Forward's business from counsel than I've learned in litigating this case because we've never done any discovery. So to the extent that those kinds of questions are relevant to whether we can state a claim, the district court should be reversed and we should be allowed to conduct that factual discovery. I don't know who hired them or if they're just—if Focus Forward comes up with ideas for survey projects on their own and then tries to sell the results or if they're doing it on like a spec basis, like they've been hired by someone in particular to go do that research. I do not know the answers to those questions. But to the extent that they're relevant, we've had no opportunity to investigate them. But are you making an allegation of pretext here? My understanding was one of your arguments is that there's pretext here? This is not a pretext case. We did not plead a pretext theory. We've had that in some other cases where, you know, to participate in the market research study, you have to sign a contract that says I'm going to become an independent contractor and I agree that you can send me promotional materials, right? I couldn't find that sort of factual basis or pretext theory here. But we don't need it. Under Fishbein, it's an advertisement. But doesn't that go to—you know, I'm listening and trying to sort of take in your argument about the buyer-seller part not being relevant. And when you mentioned most recently the we buy gold, you know, the idea that that still counts as an advertisement even though you're buying something. But in that situation, by saying we buy gold, you're saying to the person on the other end, hey, I have this service. I'm trying to get you to, in the future, use my service. Here when someone's making a—taking a survey, they're not—there's nothing about the facts that they're sending out that seems directed towards getting the recipient to, in the future, use Focus Forward for their surveys. That's not—it's not sort of, again, offering—it doesn't have that same—it's not that same situation of offering a specific service. They offer a survey response buying service. I mean, I think, you know, we might be more accustomed to saying we buy gold. It might be easier to understand that that's a commercial transaction. But this is just as commercial. They're not doing this out of the goodness of their hearts. They're taking the survey responses. But is that enough? Is it just come down to whether or not there's a commercial transaction, or does it have to be something more specific? Does it have to fit? A commercial transaction is good enough under FISHBIND. Now, the defendants would say FISHBIND redefined—rewrote the statutory definition to say any material offering participation in a commercial transaction. But that's not true. What FISHBIND held was that if you're offering participation in a commercial transaction, then you're necessarily going to be advertising the commercial availability of something. You can't offer someone to enter into a commercial transaction without implicating the commercial availability of something. That's what commercial means. So is it, though—so then you would agree with the idea that, but if the honorary were not a part of this, that this fax would be fine? Yes, unless you had a pretext there, which we did not assert in this case. It's really entirely about the compensation. That's—without that, as you said, then there's no violation of the TCPA. Yeah, FISHBIND said that's what pushes it over the line from non-advertisement to advertisement. It makes it a commercial engagement. And if I can just follow up on Judge Lee's question to make sure I understood your response to her question. You are not arguing that the faxes are pretexts for advertising? That's correct, Your Honor. This thing's an advertisement on his face under the plain language of the statute. And you're not claiming that the FCC ever suggested that non-pretextual surveys are advertisements under the TCPA? The FCC has never addressed whether a paid market research fax is an advertisement. There's a petition pending before the FCC right now on that issue. It's been sitting there for three years, and I don't know when or if it will be ruled out. It's not one of the big issues that the FTC is confronting. They still don't have a fifth commissioner. I mean, they're not doing anything. Right. They have a situation. Right. Okay. Thank you very much, Mr. Harrer. We appreciate it. And we appreciate your visit to assist the circuit. Thank you. We'll reserve the decision.